## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE TERRORIST ATTACK
ON SEPTEMBER 11, 2001

Civil Action No. 03 MDL 1570 (RCC)
ECF Case

This document relates to:

*Ashton v. Al Qaeda Islamic Army*, Case No. 02-CV-6977
*Burnett v. Al Baraka Inv. & Dev. Corp.*, 03-CV-9849
*Continental Cas. Co. v. Al Qaeda*, 04-CV-5970
*EuroBrokers Inv. V. Al Baraka Inv. & Dev. Corp.*, 04-CV-7279
*New York Marine & Gen. Ins. Co. v. Al Qaida*, 04-CV-6105
*World Trade Ctr. Props. LLC v. Al Baraka Inv. & Dev. Corp.*, (04-CV-7280)

---

**REPLY MEMORANDUM OF LAW OF AFRICAN MUSLIM AGENCY, GROVE CORPORATE, INC., HERITAGE EDUCATION TRUST, INTERNATIONAL INSTITUTE OF ISLAMIC THOUGHT, MAR-JAC INVESTMENTS, INC., MENA CORPORATION, RESTON INVESTMENTS, INC., SAFA TRUST, STERLING CHARITABLE GIFT FUND, STERLING MANAGEMENT GROUP, INC. AND YORK FOUNDATION IN FURTHER SUPPORT OF THEIR MOTIONS TO DISMISS PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM**

---

Nancy Luque (NL-1012)
Jay Hanson (admitted *pro hac vice*)
Steven K. Barentzen (SB-8777)
**DLA PIPER RUDNICK GRAY CARY US LLP**
1200 Nineteenth Street, N.W.
Washington, DC  20036-2247
Tel: 202-861-3900
Fax: 202-223-2085

*Attorneys for African Muslim Agency, Grove
Corporate, Inc., Heritage Education Trust,
International Institute of Islamic Thought,
Mar-Jac Investments, Inc., Mena Corporation,
Reston Investments, Inc., Safa Trust, Sterling
Charitable Gift Fund, Sterling Management
Group, Inc. and York Foundation*

**TABLE OF CONTENTS**

**Page**

ARGUMENT.................................................................................................................2

    I.      PLAINTIFFS' "AMENDED" PLEADINGS DO NOT COMPLY
          WITH THE COURT'S CASE MANAGEMENT ORDER ....................................2

    II.     AFRICAN MUSLIM AGENCY, IIIT, MAR-JAC INVESTMENTS,
          INC., MENA CORPORATION, RESTON INVESTMENTS, INC.,
          SAFA TRUST AND YORK FOUNDATION WERE NEVER
          SERVED WITH A SUMMONS OR COMPLAINT IN *EURO*
          *BROKERS* OR *WTC PROPERTIES* ..........................................................................4

    III.    PLAINTIFFS' COMPLAINTS DO NOT STATE A CLAIM...............................4

          A.     THE COURT'S JANUARY 18, 2005 AND
                 SEPTEMBER 21, 2005 OPINIONS MANDATE
                 DISMISSAL OF PLAINTIFFS' CLAIMS .................................................4

          B.     PLAINTIFFS' HAVE FAILED TO ALLEGE VIOLATIONS
                 OF THE ATA ..............................................................................................7

          C.     PLAINTIFFS' NON-ATA CLAIMS SHOULD BE
                 DISMISSED FOR THE SAME REASONS .............................................9

    IV.    THE CLAIMS AGAINST THE MOVING DEFENDANTS
          ALL SHOULD BE DISMISSED WITH PREJUDICE .......................................10

CONCLUSION ...........................................................................................................11

The "Moving Defendants,[1] by and through undersigned counsel, hereby submit this Reply Memorandum of Law in Further Support of their Motions to Dismiss the claims asserted against them in *Ashton, Burnett, N.Y. Marine, Euro Brokers, Continental* and *World Trade Center* pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Plaintiffs' Opposition to the Motions to Dismiss is an improper attempt to relitigate issues that already have been decided by the Court. Plaintiffs continue to argue that the Moving Defendants are part of an "extensive and overlapping network of companies and persons engaged in material support of al Qaeda's terrorist activities." (Plaintiffs' Opp., at 2.) But, to support this proposition, Plaintiffs rely upon the same allegations that the Court found "provided scant basis for linking these entities under the SAAR Network title." *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 823 (S.D.N.Y. 2005) ("*In re Terrorist Attacks I*"). Moreover, Plaintiffs' allegations against each specific Moving Defendant are virtually identical to those the Court already found do not state a claim against them in *Burnett* and *Ashton*. *In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 569-72 (S.D.N.Y. 2005) ("*In re Terrorist Attacks II*").[2]

Because Plaintiffs have had an opportunity to amend the Complaints with the benefit of the Court's two opinions but failed to assert any new allegations, Plaintiffs' claims should not only be dismissed, but dismissed with prejudice and without further leave to amend.

---

[1] The Moving Defendants are African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute of Islamic Thought ("IIIT"), Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sterling Charitable Gift Fund, Sterling Management Group, Inc. and York Foundation.
[2] The Court also dismissed claims against alleged "SAAR Network" Defendants Muhammad Ashraf, M. Omar Ashraf, Yaqub Mirza, Taha Al-Alwani, Iqbal Unus in *Federal Insurance* and Mar-Jac Poultry in *Ashton, Burnett* and *Federal Insurance*.

## ARGUMENT

### I.  PLAINTIFFS' "AMENDED" PLEADINGS DO NOT COMPLY WITH THE COURT'S CASE MANAGEMENT ORDER[3]

Plaintiffs assert -- with no explanation -- that their "amended" pleadings comply "in letter and in spirit" with the Court's Case Management Order #2 (the "CMO-2"). (Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss ("Plaintiffs' Opp."), MDL Docket # 1571, at 2.) But as the Moving Defendants detailed in their Motions to Dismiss, Plaintiffs did not comply with the letter of the CMO-2 and "file an amended complaint that includes all amendments made prior to that date." (Memorandum of Law in Support of the Moving Defendants' Motions to Dismiss Pursuant to Rule 12(b)(6) ("MTD"), MDL Docket # 1434, at 7.)

Nor did Plaintiffs comply with the spirit of the CMO-2. Plaintiffs each filed a prolix and/or confusing pleading that imposes a burden on Defendants and the Court to determine exactly what is being alleged against whom. This is precisely what the CMO-2 was designed to prevent. Accordingly, the Court should strike all of the addendums, attachments and exhibits to any of these pleadings, and any document that is incorporated into the complaint by reference, and only consider those allegations that are contained in the actual complaint filed by Plaintiffs in determining the motions to dismiss.

Plaintiffs argue, in the alternative, that they be given further leave to amend their pleadings to comply with the CMO-2. But, the Court's July 27, 2005 Order made clear that any further amendments to the complaints may only be made pursuant to Rule 15. Plaintiffs have not even attempted to make a showing that they meet the requirements of Rule 15. Plaintiffs have

---

[3] This argument applies to all of the actions other than *Ashton*. The *Ashton* Plaintiffs' Sixth Amended Complaint complies with the Court CMO-2, and provides an example of what the other Plaintiffs ought to have done.

had more than sufficient time to file amended complaints and comply with the CMO-2, and their request to further amend their complaints should be denied.

## II. AFRICAN MUSLIM AGENCY, IIIT, MAR-JAC INVESTMENTS, INC., MENA CORPORATION, RESTON INVESTMENTS, INC., SAFA TRUST AND YORK FOUNDATION WERE NEVER SERVED WITH A SUMMONS OR COMPLAINT IN *EURO BROKERS* OR *WTC PROPERTIES*

Plaintiffs complain that African Muslim Agency, IIIT, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust And York Foundation failed to move to dismiss the claims against them in *Euro Brokers* and *WTC Properties*. (Plaintiffs' Opp., at 13.) But these Moving Defendants were not served with a summons and complaint, nor did they voluntarily appear in either of these actions. Accordingly, they are not parties to those actions and were not required to move to dismiss the claims in those actions.[4]

## III. PLAINTIFFS' COMPLAINTS DO NOT STATE A CLAIM

### A. The Court's January 18, 2005 and September 21, 2005 Opinions Mandate Dismissal of Plaintiffs' Claims

Plaintiffs argue that this Court's January 18, 2005 and September 21, 2005 Opinions do not have a *res judicata* effect with respect to their claims against the Moving Defendants because Plaintiffs have alleged additional facts not considered by the Court in issuing those two rulings. (Plaintiffs' Opp., at 14.) But Plaintiffs are wrong.

The great bulk of Plaintiffs' allegations against the Moving Defendants concern Plaintiffs' theory that the Moving Defendants are all part of the so-called "SAAR Network." (Plaintiffs' Opp., at 4-8.) Plaintiffs continue to pursue this theory even though the Court already has found that there was "scant basis for linking these entities under the SAAR Network title."

---

[4] Even if these Moving Defendants had been served, the claims against them in *Euro Brokers* and *World Trade Center* should be dismissed because Plaintiffs' allegations in those actions are no different than those asserted by the Plaintiffs that are the subject of this motion.

*In re Terrorist Attacks I*, at 823. The allegations Plaintiffs assert in support of this theory of liability are no different from those asserted by the *Federal Insurance* Plaintiffs and reviewed by the Court in making this finding, and therefore also fail to allege the existence of a "SAAR Network."[5]

Plaintiffs' only allegation in support of the existence of a "SAAR Network" that is even arguably different from that in *Federal Insurance* is Plaintiffs' allegation that alleged "SAAR Network" member Yaqub Mirza was associated with a company called "Sanabel al-Kheer" and the International Islamic Relief Organization ("IIRO"). (Plaintiffs' Opp., at 6.) This allegation, however, is not supported by Plaintiffs' complaints -- rather it comes from materials found outside the four corners of the complaints -- and therefore should not even be considered by the Court on this motion to dismiss. *In re Terrorist Attacks II*, at 564 ("The Court limits its review to the facts stated in the complaints, documents attached to the complaints as exhibits, and documents incorporated by reference in the Complaint.")

Moreover, the allegation only concerns Yaqub Mirza who is not a Moving Defendant. None of the Moving Defendants are alleged to have any relationship with Sanabel al-Kheer or IIRO. Further, the allegation does not even state a claim against Yaqub Mirza, who is not alleged to have done anything to knowingly provide material support to Al Qaeda or those responsible for the September 11th Attacks. (*See* Dr. Mirza's Motion to Dismiss, MDL Docket # 1539, at 20-21.)[6] This allegation does nothing to support the existence of a so-called "SAAR Network."

---

[5] In particular, the allegations in *New York Marine* are a carbon copy of those in *Federal Insurance*. The Court previously found that the "*Burnett* and *Ashton* complaints' allegations against the SAAR Network entities are substantially similar to one another." *In re Terrorist Attacks II*, at 569.
[6] The claims against Dr. Mirza were dismissed in *Federal Insurance*. *In re Terrorist Attacks II*, at 572.

Plaintiffs' specific allegations against the Moving Defendants are also no different than those that the Court already found in its September 21, 2005 Opinion do not state a claim against African Muslim Agency, Grove Corporate, Heritage Education Trust, IIIT, Mar-Jac Investments, Reston Investments, Safa Trust and York Foundation in *Burnett*, and IIIT in *Ashton*. The only allegation that Plaintiffs assert is different than those previously considered by the Court is the allegation "regarding the secreting of funds to the Isle of Man by Defendants African Muslim Agency, Heritage Education Trust and the International Institute of Islamic Thought." (Plaintiffs' Opp., at 14.) But this allegation was previously considered by the Court and found not to state a claim against any of the Moving Defendants.

As an initial matter, the allegation is only made in the *Euro Brokers* and *World Trade Center* RICO Statements. But two of the three Moving Defendants allegedly implicated by this allegation, African Muslim Agency and IIIT, were not served with a summons or complaint and are not parties to *Euro Brokers* and *World Trade Center*. (*See infra.*, at 4.) Therefore, even if this allegation did state a claim -- and it does not – it would only do so against one Moving Defendant, Heritage Trust, in two cases, *Euro Brokers* and *World Trade Center*.[7]

But the allegations do not even state a claim against Heritage. The Court already considered similar allegations of "money laundering" with respect to alleged "SAAR Network" Defendant Mar-Jac Poultry in the *Federal Insurance*. Plaintiffs in that case alleged that Mar-Jac Poultry:

> donated money to African Muslim Agency, which the Plaintiffs
> claim was later "laundered," and . . . that it donated money to
> unnamed SAAR Network entities, which was later forwarded to al
> Qaeda.

---

[7] Moreover, since the "amended" pleadings in *EuroBrokers* and *WTC* failed to comply with the CMO-2, the Court should not considered the allegations in those RICO Statements at all.

*In re Terrorist Attacks II*, at 571.

The Court found that this allegation against Mar-Jac Poultry failed to state a claim because it did not provide "Mar-Jac Poultry with notice as to how it could be liable for the terrorist attacks." *Id.* The Court cited to the Seventh Circuit's ruling in *Boim* which held that to "hold defendants liable for donating money without knowledge of the donee's intended criminal use of the funds would impose strict liability." *Boim*, at 1012.

Plaintiffs' allegations of "money laundering" against African Muslim Agency, IIIT and Heritage are no different than those that the *Federal Insurance* Plaintiffs asserted against Mar-Jac Poultry. Plaintiffs have alleged that African Muslim Agency, IIIT and Heritage "laundered" money which was eventually transferred to the Isle of Man where it could no longer be traced. Even if this allegation were true, Plaintiffs admit that they do not know where the funds went because they could not be traced. Therefore, Plaintiffs admit that they have not, as they must, alleged that any of these funds actually went to support to Al Qaeda or that the Defendants knew that to be the case. *In re Terrorist Attacks II*, at 564 (Plaintiffs must plead that Defendants knew of al Qaeda's illegal activities, "that they desired to help those activities succeed, and they engaged in some act of helping the illegal activities.") Accordingly, Plaintiffs' allegation of "money laundering" fail to state a claim against any of the Moving Defendants.

**B.     Plaintiffs' Have Failed to Allege Violations of the ATA**

Plaintiffs argue that the Moving Defendants "ignore the relevant case law and legislative history that provides that material support or resources need not be given directly to the hijackers themselves." (Plaintiffs' Opp., at 15, 16.) But the Moving Defendants have not argued that Plaintiffs must allege that material support be given directly to the hijackers. Rather, relying on this Court's January 18, 2005 and September 21, 2005 Opinion, the Moving Defendants have

argued that to survive a motion to dismiss Plaintiffs must plead that defendants knew of al

Qaeda's illegal activities, "that they desired to help those activities succeed, and they engaged in

some act of helping the illegal activities." *In re Terrorist Attacks II,* 392 F. Supp. 2d at 564.

This is the same standard that was announced by the Seventh Circuit decision in *Boim v.*

*Quaranic Literary Inst., et al.,* 291 F. 3d 1000 (7th Cir. 2002). Moreover, it appears to be the

same standard that Plaintiffs agree governs. (Plaintiffs' Opp., at 15.) Plaintiffs' claims should

be dismissed because they have failed to meet this standard, not because Plaintiffs have failed to

allege "direct" support of Al Qaeda.

That Plaintiffs have not relied upon the wrong pleading standard is confirmed by another

"terrorism" case, in *Linde v. Arab Bank, PLC,* 384 F. Supp. 2d 571, 580 (E.D.N.Y. 2005), relied

upon by Plaintiffs. In that case, the Court applied the same "liberal pleading standard" that

Seventh Circuit applied in *Boim.* In *Linde,* Plaintiffs alleged "that the Bank plays a central role

in a well-publicized plan to reward terrorists killed and injured in Palestinian suicide attacks in

Israel and that the Bank knows that the groups to which it provides services are engaged in

terrorist activities" stated a claim *Id.* at 588. These allegations stated a claim because:

> [T]hey describe the wrongful acts performed by the terrorists, the
> defendant's general awareness of its role as part of an overall
> illegal activity, *and the defendant's knowing and substantial*
> *assistance to the principal violation.*

*Id.* at 584 (emphasis supplied).

The Court specifically distinguished these allegations against Arab Bank from those that

this Court found do not state a claim:

> Nothing in the complaints suggests that Arab Bank is a mere
> unknowing conduit for the unlawful acts of others, about whose
> aims the Bank is ignorant. Although the Bank would like this
> court to find, as did the court in *In re Terrorist Attacks,* that it is
> engaged in "routine banking services," see 349 F. Supp. 2d at 835,

8

> here, given plaintiffs' allegations regarding the knowing and
> intentional nature of the Bank's activities, there is nothing
> "routine" about the services the Bank is alleged to provide.

*Id.* at 588.

As this Court has already found, Plaintiffs' claims should be dismissed because -- unlike the *Linde* Plaintiffs -- they have not alleged that the Moving Defendants provided knowing and substantial assistance -- either directly or indirectly -- to Al Qaeda or the September 11th attackers.

**C.    Plaintiffs' Non-ATA Claims Should Be Dismissed For the Same Reasons**

Plaintiffs argue that "Defendants make no attempt to argue that Plaintiffs' non-ATA claims against them should also be dismissed for failure to state a claim." (Plaintiffs' Opp., at 18.) But the Moving Defendants have sought dismissal of all of the claims against them for the same reason that the ATA claims should be dismissed.

Indeed, in its September 21, 2005, the Court dismissed all of the Torture Victim Protection Act ("TVPA") and negligence claims against all of the Defendants moving for dismissal under Rule 12(b)(6). *In re Terrorist Attacks II*, at 566. The Court also noted that if "Plaintiffs state a claim for relief under the ATA, they will have also stated a claim for wrongful death and survival, the *Federal* Plaintiffs will have stated a claim for trespass, and the *Ashton* and *Burnett* Plaintiffs will have stated claims for intentional infliction of emotional distress. Plaintiffs who are aliens will have also stated a claim for relief under the [Alien Tort Claims Act]."[8] *Id.* Therefore, all of Plaintiffs non-ATA claims are dependant upon their ability to state claims under the ATA. Because Plaintiffs have not stated an ATA claim, their other claims fail

---

[8] Even if Plaintiffs had stated the other elements of an ATCA claim, only Plaintiffs who are aliens may assert an ATCA claim. *In re Terrorist Attacks II*, at 566 (ATCA "may provide a basis of recovery for those Plaintiffs who are aliens.")

as well. *See In re Terrorist Attacks I*, at 837-38 (dismissing *Federal Insurance* Plaintiffs' claims against so-called "SAAR Network" Defendants for Civil RICO, the Torture Victim Protection Act, assault and battery, intentional infliction of emotional distress and negligence.)

In particular, Plaintiffs' RICO claims[9] fail because Plaintiffs have not alleged "that the [Defendants] participated 'in the operation or management of the enterprise itself,' which requires that these Defendants must have had some part in directing the enterprise's affairs." *Redtail Leasing, Inc. v. Bellezza*, 1997 WL 603495, at * 5 (S.D.N.Y. 1997); *see In re Terrorist Attacks II*, at 572 (dismissing RICO claims against Mar-Jac Poultry for failing to allege it had any role in directing the enterprise).

## IV.    THE CLAIMS AGAINST THE MOVING DEFENDANTS ALL SHOULD BE DISMISSED WITH PREJUDICE

Plaintiffs' claims should be dismissed with prejudice because their time to amend has now passed. Plaintiffs had the opportunity to amended their complaint on September 30, 2005 with the benefit of the Court's September 21, 2005 Opinion and Order detailing precisely what they must allege to withstand a motion to dismiss. All of the Plaintiffs filed "amended" pleadings, but none include any allegations in their "amended" Complaint that were not already considered by the Court in issuing the September 21, 2005 Opinion. It would be futile to provide Plaintiffs yet another opportunity to amend their pleading, as it is clear that if Plaintiffs could state a claim against the Moving Defendants they would have done so by now.

---

[9] The only Plaintiffs that still appear to be asserting RICO Claims are *World Trade Center* and *Euro Brokers*.

## CONCLUSION

For all the foregoing reasons, the Moving Defendants respectfully request that the Court grant their Motion and dismiss all of the claims asserted against them in *Ashton, Burnett, N.Y. Marine, Euro Brokers, Continental* and *World Trade Center* with prejudice.

Respectfully submitted,

Dated:    January 19, 2006    By: /s/ Nancy Luque _____

Nancy Luque (NL-1012)
Jay Hanson (admitted *pro hac vice*)
Steven K. Barentzen (SB-8777)
DLA PIPER RUDNICK GRAY CARY US LLP
1200 Nineteenth Street
Washington, DC  20036-2247
Tel: 202-861-3900
Fax: 202-223-2085

*Attorneys for African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sterling Charitable Gift Fund, Sterling Management Group, Inc., and York Foundation*

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of January, 2006, I caused an electronic copy of the foregoing Reply Memorandum of Law in Further Support of Motion To Dismiss Of African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute Of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sterling Charitable Gift Fund, Sterling Management Group, Inc. and York Foundation Pursuant To Rule 12(B)(6) For Failure To State a Claim to be served by the Court's electronic filing system upon all parties scheduled for electronic notice.


/s/  Steven K. Barentzen_____
Steven K. Barentzen (SB-8777)