UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC) <br> ECF Case |
|---|---|

*This document relates to:*

*Federal Insurance Co. v. al Qaida*, Case No. 03-CV-6978 (RCC) (S.D.N.Y.)

**AFFIDAVIT OF DONALD L. SIEGRIST, JR. IN SUPPORT OF PROOF OF DAMAGES FOR CHUBB & SON, A DIVISION OF FEDERAL INSURANCE COMPANY ON BEHALF OF ITSELF AND AS MANAGER OF ITS INSURANCE SUBSIDIARIES**

I, Donald L. Siegrist, Jr., being duly sworn according to law, depose and say,

1. I am a Vice President and an Officer of Chubb & Son, a division of Federal Insurance Company, and this Affidavit is submitted on behalf of Federal Insurance Company, individually, and as manager of its insurance subsidiaries which are known informally as the Chubb Group of Insurance Companies (hereinafter "Chubb"), and plaintiffs in the above action.

2. I make this Affidavit in support of Chubb's Proof of Damages.

3. As an Officer of Chubb, I have been authorized to execute this Affidavit on its behalf.

4. As an Officer of Chubb, I have knowledge of the day-to-day affairs of the business of the company, including knowledge of the process related to submission of claims and adjustment of claims under policies of insurance issued by Chubb. The Chubb companies identified hereinafter participate in the adjustment of claims as both primary and excess insurance companies for numerous policy holders and insureds. I have knowledge of both the direct adjustment of claims for those Chubb companies which are primary insurers, and knowledge of the adjustment process in those situations wherein Chubb is an excess insurer for a particular policy holder and insured. The adjustment process hereinafter described is consistent for those claims wherein a particular Chubb company is either a primary or excess insurance company for a policy holder or insured.

5. The adjustment process includes compliance with standards and procedures which must be followed in completing the adjustment of the claim and the subsequent payment of claims under the policies of insurance. The most basic standards of compliance include the following:

> **Insured's Duties in The Event of Loss Or Damage**
>
> You must see to it that the following are done in the event of loss or damage:

- Notify us, or one of our authorized representatives, as soon as possible, as to what occurred. Include a description of the property involved, that time and place of the loss or damage, and names and addresses of available witnesses. If there has been loss or damage that may result in a loss under any Business Income or Extra Expense Insurance, notify us by telephone, telegraph or facsimile at our expense.

- Notify the police if a law may have been broken.

- Take every reasonable step to protect the covered property from further damage, and keep a record of your expenses necessary to protect such covered property for consideration in the settlement of the claim. This will not increase any Limit Of Insurance. However, we will not pay for any subsequent loss or damage resulting from a peril that is not a covered peril. Also, if feasible, set such damaged property aside and in the best possible order for examination.

- If you intend to continue your business, you must resume all or part of your operations as quickly as possible.

- File with us, or with our authorized representative, sworn proof of loss within 90 days after the date of loss or damage.

- Cooperate with us in the investigation, settlement or handling of any claim.

- Authorize us to obtain records or reports necessary for our investigation.

- At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss or damage claimed.

- As often as may be reasonably required, permit us to inspect the property and examine your books and records.

- Permit us to take samples of the damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

- Permit us to examine any insured under oath, outside the presence of any other insured at such times as may e reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

This language (or substantially similar language) is found within most property policies of insurance issued by Chubb.

6. The adjustment of claims submitted by policy holders and insureds are subject to specific and exacting requirements of proof, including, but not limited to, (a) compliance with, and measurement against, the terms and provisions of the policies of insurance, (b) examination by qualified adjustment professionals, (c) analysis and review by outside professionals including, but not limited to, certified public accounts, engineers, architects, and construction cost specialists, and (d) production of records and other documentation in support of submitted claims.

7. I also receive and regularly review a variety of reports prepared by other company employees and representatives responsible for the adjustment process, including individuals reports of particular claims and summary reports of claims submitted to Chubb. These reports are prepared by both Chubb employees who adjust claims in the field and independent adjusters retained by the company to complete the same tasks. In those situations wherein a Chubb company is an excess insurer, these reports are prepared by the primary insurance company claims adjustment representative or employee, or are included within reports sent to Chubb by the primary insurance company. The reports generated for both Chubb primary and excess insurance companies contain information and details on the

particulars of the adjustment and payments for claims submitted by policy holders and insureds. Additionally, in further discharge of my job duties and responsibilities, I rely upon financial data and records related to the adjustment of claims and payment for these claims. The information and data I receive includes executive summaries of claims in process, identification of issues which arise in the adjustment of claims which require resolution, and other data which allows me to determine the accuracy of the claims adjustment process. For these reasons, I am familiar with the adjustment process and disposition of claims submitted by our policy holders and insureds.

8. The adjustment process is also subject to internal review and audit by other management and supervisory personnel, which further ensures accuracy in the final adjustment and payment of claims submitted by policy holders and insureds. Our management and supervisory personnel have experience in a wide range of areas, including experience in the calculation and determination of loss of business income, property values, and construction costs and expenses. Further, each of our management and supervisory personnel are trained or experienced in their particular areas of specialty, and each individual brings to the claims evaluation process many years of experience. I have knowledge of their work and regularly rely upon it in my own evaluation and disposition of claims.

9. The adjustment of claims is further subject to numerous industry regulatory standards and requirements, including fair claims handling statutes and codes within various jurisdictions. We are bound by law to follow these standards and requirements in the adjustment and disposition of all claims.

10. In connection with the preparation of this Affidavit, I have undertaken review of Chubb's records necessary to determine that insurance claims were submitted to Chubb by its policy holders and insureds for damages and injuries resulting from the September 11, 2001 Attack on the United States (the "September 11th Attack"), and that payments were made by Chubb in compensation for losses suffered by our policy holders and insureds for the claims submitted by them under Chubb's policies of insurance.

11. At the time of the September 11th Attack, Chubb provided property, business interruption and related insurance coverage to numerous corporations, companies, partnerships, affiliations, persons, trusts and other parties ("policy holders and insureds") who suffered injuries, losses and damages as a result of the September 11th Attack.

12. Based on my review of Chubb's records, and information I have also received in my capacity as an Officer of Chubb, I have knowledge concerning the insurance claims submitted to Chubb by its policy holders and insureds for the damages, losses, and injuries resulting from the September 11th Attack, and the adjustment and subsequent payments made by Chubb in compensation for these submitted claims.

13. The records and information reviewed revealed that Chubb was able to make a determination about the validity of the claims filed with Chubb, and this determination was made by Chubb based upon all information, data, reports and evaluations provided to it. Chubb paid for those claimed losses submitted by its policy holders and insureds which met the requirements of our policies of insurance.

14. In accordance with the terms of the applicable policies of insurance, the adjustment process as described herein, the needs of the insureds, the exigencies of the aftermath of the September 11th Attack, and sound considerations related to business operations, Chubb continues to make payments to its policy holders and insureds and it has made total aggregate payments as of the date of this affidavit in the amount of $2,217,468,721.70 and in compensation for property, business interruption and related damages, and it would not have made these payments and suffered these losses, nor would its insureds and policy holders have suffered these losses, but for the September 11th Attack. Specifically, the Chubb companies which have made payments to policy holders and insureds as a result of the September 11th Attack are, as follows:

| Company | Amount |
|---|---|
| Vigilant Ins. Co. | $ 42,305,933.24 |
| Chubb Custom Ins. Co. | $ 612,585.00 |
| Chubb Indemnity Ins. Co. | $ 4,083,878.20 |
| Federal Ins. Co. | $ 1,513,667,597.39 |
| Chubb Ins. Co. of NJ | $ 412,681.71 |
| Chubb Ins. Co. of Canada | $ 50,452,395.71 |
| Pacific Indemnity Co. | $ 9,936,536.66 |
| Great Northern Ins. Co. | $ 595,997,113.79 |

7

These companies and the payments listed above represent the aggregate amount of $2,217,468,721.70, paid by all Chubb companies to-date in this matter.

15. Chubb also suffered losses because of the need to incur costs in the claims adjustment process. These costs included the fees charged by outside consultants such as accountants and engineers, who were utilized to ensure the accuracy of the claims submitted and losses sustained. These costs also included the fees charged by legal counsel retained to advise and assist Chubb in fairly and fully responding to our obligations under the policies of insurance and to resolve questions of policy coverage consistent with the law and our policy obligations. These costs further included the expenses incurred by our claims adjustment professionals in responding to the extraordinary demands of the claims submitted following the September 11th Attack. Chubb continues to incur claims adjustment costs, and the claims adjustment costs incurred by it as of the date of this Affidavit total $30,579,071.71, and Chubb would not have suffered these losses but for the September 11th Attack.

16. The loss of money represented by the amounts paid, and costs and expenses incurred, by Chubb was a direct result of the September 11th Attack.

17. A schedule identifying each insured and policy holder who has submitted a covered claim as of the date of this Affidavit, and for which adjustment was completed and payment made in the total aggregate amount of $2,217,468,721.70, is attached hereto as Exhibit "A". Also, a schedule identifying the category and the total of claims adjustment costs of $30,579,071.71 incurred by Chubb as of the date of this Affidavit is attached hereto as Exhibit "B".

Further affiant says naught.

Donald L. Siegrist, Jr.
Vice President
Chubb & Son, a division of
Federal Insurance Company

Sworn to and subscribed
before me this
___ day of Feb, 20 07

CAMILLE R. DOUGLAS
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 11/13/2007

9

Pursuant To This Court's Order Dated May 9, 2005, The Schedules Attached As Exhibits A & B Have Been Filed Under Seal In Order To Protect The Identity Of The Insureds From Public Disclosure.