# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*

*Federal Insurance Co. v. al Qaida*, Case No. 03-CV-6978 (RCC) (S.D.N.Y.)

## AFFIDAVIT OF JOHN F. MURPHY IN SUPPORT OF ONEBEACON INSURANCE GROUP'S PROOF OF DAMAGES

I, John F. Murphy, being duly sworn according to law, depose and say,

1. I am the Property Claim Officer of OneBeacon Insurance Group, a plaintiff in the above-action.

2. I make this Affidavit in support of OneBeacon Insurance Group's Proof of Damages.

3. As an Officer of OneBeacon Insurance Group, I have been authorized to execute this Affidavit on its behalf.

4. As an Officer of OneBeacon Insurance Group, I have personal knowledge of the day-to-day affairs of the business of the company, including personal knowledge of the process related to submission of claims, and the adjustment of claims under policies of insurance issued by OneBeacon Insurance Group.

5. The adjustment process includes compliance with standards and procedures which must be followed in completing the adjustment of the claim and the subsequent payment of claims under the policies of insurance. The most basic standards of compliance include the following:

*Duties In The Event Of Loss Or Damage*

*You must see that the following are done in the event of loss or damage to Covered Property:*

*Notify the police if a law may have been broken.*

*Give us prompt notice of the loss or damage. Include a description of the property involved.*

*As soon as possible, give us a description of how, when and where the loss or damage occurred.*

*Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.*

*At our request, give us the complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.*

*As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.*

*Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.*
*Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.*

*Cooperate with us in the investigation or settlement of the claim.*

*We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.*

This language (or substantially similar language) is found within all property policies of insurance issued by OneBeacon Insurance Group.

6. The adjustment of claims submitted by policy holders and insureds are subject to specific and exacting requirements of proof, including, but not limited to, (a) compliance with, and measurement against, the terms and provisions of the policies of insurance, (b) examination by qualified adjustment professionals, (c) analysis and review by outside professionals, such as certified public accounts, engineers, architects, and construction cost specialists, and (d) production of records and other documentation in support of submitted claims.

7. I also receive and regularly review reports prepared by other company officials responsible for the adjustment process, including the particulars of the adjustment and payments for claims submitted by policy holders and insureds. Additionally, in the discharge of my job duties and responsibilities, I regularly rely upon financial data and records related to the adjustment of claims and payment for these claims. The information and data I receive includes executive summaries of claims in process, identification of issues which arise in the adjustment of claims which require resolution, and other data which allows me to determine the accuracy of the claims adjustment process. For these reasons, I am familiar with the

adjustment process and disposition of claims submitted by our

policy holders and insureds

8.  The adjustment process is also subject to internal review and audit by other management and supervisory personnel, which further ensures accuracy in the final adjustment and payment of claims submitted by policy holders and insureds. Our management and supervisory personnel have expertise in a wide range of areas, including expertise in the calculation and determination of loss of business income, property values, and construction costs and expenses. Further, each of our management and supervisory personnel are trained or experienced in their particular areas of specialty, and each individual brings to the claims evaluation process many years of experience. I have personal knowledge of their work and regularly rely upon it in my own evaluation and disposition of claims.

9.  The adjustment of claims is further subject to numerous industry regulatory standards and requirements, including fair claims handling statutes and codes within various jurisdictions. We are bound by law to follow these standards and requirements in the adjustment and disposition of all claims.

10. In connection with preparation of this Affidavit, I have undertaken a review of OneBeacon Insurance Group's business records relating to insurance claims submitted to OneBeacon Insurance Group by its policy holders and insureds for damages and injuries resulting from the

September 11, 2001 Attack on the United States (the "September 11th Attack"), and the payments made by OneBeacon Insurance Group in compensation for losses suffered by our policy holders and insureds for the claims submitted by them under OneBeacon Insurance Group's policies of insurance.

11. At the time of the September 11th Attack, OneBeacon Insurance Group provided property, business interruption and related insurance coverage to numerous corporations, companies, partnerships, affiliations, persons, trusts and other parties ("policy holders and insureds") who suffered injuries, losses and damages as a result of the September 11th Attack.

12. Based on my review of OneBeacon Insurance Group's business records, as well as information I have also received in my capacity as an Officer of OneBeacon Insurance Group, I have personal knowledge concerning the insurance claims submitted to OneBeacon Insurance Group by its policy holders and insureds for the damages, losses, and injuries resulting from the September 11th Attack, and the adjustment and subsequent payments made by OneBeacon Insurance Group in compensation for these submitted claims.

13. I have reviewed the OneBeacon Insurance Group records related to the time period associated with the insurance claims submitted to OneBeacon Insurance Group by its policy holders and insured for the damages, losses, and injuries resulting from the September 11th attack, and the adjustment

and subsequent payments made by OneBeacon Insurance Group in compensation for these submitted claims. I am satisfied from a review of the records that the adjustment of the claims was thorough and complete, and that the payments made were properly and satisfactorily documented and valid pursuant to the obligations of OneBeacon Insurance Company under its various policies of insurance.

14. In accordance with the terms of the applicable policies of insurance, the adjustment process as described herein, the needs of the insureds, the exigencies of the aftermath of the September 11th Attack, and sound consideration relating to business operations, OneBeacon Insurance Group has made total aggregate payments as of the date of this affidavit in the amount of $185,805,247.79 in compensation for property, business interruption and related damages, and it would not have made these payments and suffered these losses, nor would its insureds and policy holders have suffered these losses, but for the September 11th Attack.

15. We also suffered losses because of the need to incur costs in the claims adjustment process. These costs included the fees charged by outside consultants such as accountants and engineers, who were utilized to ensure the accuracy of the claims submitted and losses sustained. These costs also included the expenses incurred by our claims adjustment professionals in responding to the extraordinary demands of the claims submitted following the September 11th Attack. The claims adjustment

costs incurred by OneBeacon Insurance Group are included in the total amount listed in paragraph 14 above.

16. We also suffered losses because of the need to incur legal expenses in the claims adjustment process. These expenses involved the fees charged by counsel retained to advise and assist us in fairly and fully responding to our obligations under the policies of insurance and to resolve questions of policy coverage consistent with the law and our policy obligations. The legal expenses incurred by OneBeacon Insurance Group are included in paragraph 14 above.

17. The loss of money represented by the amounts paid, and costs and expenses incurred, by OneBeacon Insurance Group was a direct result of the September 11th Attack.

18. A schedule identifying each insured and policy holder who submitted a covered claim which was adjusted as of the date of this Affidavit, and for which payment in the total aggregate amount of $185,805,247.79 was made by OneBeacon Insurance Group is attached hereto as Exhibit "A", Columns A through D.

Further affiant says naught.

*[signature]*
Property Claim Officer
OneBeacon Insurance Group

**BARRY JOHNSON ROCK**
Notary Public
Commonwealth of Massachusetts
My Commission Expires
September 28, 2012

*[signature] Barry BR*
1/16/07

Pursuant To This Court's Order Dated May 9, 2005, The Schedule Attached As Exhibit A Has Been Filed Under Seal In Order To Protect The Identity Of The Insureds From Public Disclosure.