UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC) ECF Case |
|---|---|

*This document relates to:*

*Federal Insurance Co. v. al Qaida*, Case No. 03-CV-6978 (RCC) (S.D.N.Y.)

## AFFIDAVIT OF ROBERT KNOWLES IN SUPPORT OF TIG INSURANCE COMPANY'S PROOF OF DAMAGES

I, Robert Knowles, being duly sworn according to law, depose and say,

1. I am the Vice President and an Officer of TIG Insurance Company, a plaintiff in the above action.

2. I make this Affidavit in support of TIG Insurance Company's Proof of Damages.

3. As an Officer of TIG Insurance Company, I have been authorized to execute this Affidavit on its behalf.

4. As an Officer of TIG Insurance Company, I have personal knowledge of the day-to-day affairs of the business of the company, including personal knowledge of the process related to the submission of claims, and the adjustment of claims under policies of insurance issued by TIG Insurance Company.

5. The adjustment process includes compliance with standards and procedures which must be followed in completing the adjustment of the claim and the subsequent payment of claims under the policies of insurance. The most basic standards of compliance include the following:

*Duties In The Event Of Loss Or Damage*

*You must see that the following are done in the event of loss or damage to Covered Property:*

*Notify the police if a law may have been broken.*

*Give us prompt notice of the loss or damage. Include a description of the property involved.*

*As soon as possible, give us a description of how, when and where the loss or damage occurred.*

*Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.*

*At our request, give us the complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.*

*As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.*

*Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.*
*Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.*

*Cooperate with us in the investigation or settlement of the claim.*

*We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.*

This language (or substantially similar language) is found within all property policies of insurance issued by TIG Insurance Company.

6. The adjustment of claims submitted by policy holders and insureds are subject to specific and exacting requirements of proof, including, but not limited to, (a) compliance with, and measurement against, the terms and provisions of the policies of insurance, (b) examination by qualified adjustment professionals, (c) analysis and review by outside professionals, such as certified public accounts, engineers, architects, and construction cost specialists, and (d) production of records and other documentation in support of submitted claims.

7. I also receive and regularly review reports prepared by other company officials responsible for the adjustment process, including the particulars of the adjustment and payments for claims submitted by policy holders and insureds. Additionally, in the discharge of my job duties and responsibilities, I regularly rely upon financial data and records related to the adjustment of claims and payment for these claims. The information and data I receive includes executive summaries of claims in process, identification of issues which arise in the adjustment of claims which require resolution, and other data which allows me to determine the accuracy of the claims adjustment process. For these reasons, I am familiar with the

adjustment process and disposition of claims submitted by our policy holders and insureds.

8. The adjustment process is also subject to internal review and audit by other management and supervisory personnel, which further ensures accuracy in the final adjustment and payment of claims submitted by policy holders and insureds. Our management and supervisory personnel have expertise in a wide range of areas, including expertise in the calculation and determination of loss of business income, property values, and construction costs and expenses. Further, each of our management and supervisory personnel are trained or experienced in their particular areas of specialty, and each individual brings to the claims evaluation process many years of experience. I have personal knowledge of their work and regularly rely upon it in my own evaluation and disposition of claims.

9. The adjustment of claims is further subject to numerous industry regulatory standards and requirements, including fair claims handling statutes and codes within various jurisdictions. We are bound by law to follow these standards and requirements in the adjustment and disposition of all claims.

10. In connection with preparation of this Affidavit, I have undertaken a review of TIG Insurance Company's business records relating to insurance claims submitted to TIG Insurance Company by its policy holders and insureds for damages and injuries resulting from the September 11, 2001

Attack on the United States (the "September 11th Attack"), and the payments made by TIG Insurance Company in compensation for losses suffered by our policy holders and insureds for the claims submitted by them under TIG Insurance Company's policies of insurance.

11. At the time of the September 11th Attack, TIG Insurance Company provided property, business interruption and related insurance coverage to numerous corporations, companies, partnerships, affiliations, persons, trusts and other parties ("policy holders and insureds") who suffered injuries, losses and damages as a result of the September 11th Attack.

12. Based on my review of TIG Insurance Company's business records, as well as information I have also received in my capacity as an Officer of TIG Insurance Company, I have personal knowledge concerning the insurance claims submitted to TIG Insurance Company by its policy holders and insureds for the damages, losses, and injuries resulting from the September 11th Attack, and the adjustment and subsequent payments made by TIG Insurance Company in compensation for these submitted claims.

13. I was the individual ultimately responsible for determining the validity of the claims filed with TIG Insurance Company. I made a determination based upon all information, data, reports, and evaluations provided to me whether TIG Insurance Company was responsible for the losses claimed pursuant to the submissions of our policy holders and insureds and the requirements of our policies of insurance.

14. In accordance with the terms of the applicable policies of insurance, the adjustment process as described herein, the needs of the insureds, the exigencies of the aftermath of the September 11th Attack, and sound considerations related to business operations, TIG Insurance Company has made total aggregate payments as of the date of this affidavit in the amount of $76,084,229.30 in compensation for property, business interruption and related damages, and it would not have made these payments and suffered these losses, nor would its insureds and policy holders have suffered these losses, but for the September 11th Attack.

15. We also suffered losses because of the need to incur costs in the claims adjustment process. These costs included the fees charged by outside consultants such as accountants and engineers, who were utilized to ensure the accuracy of the claims submitted and losses sustained. These costs also included the expenses incurred by our claims adjustment professionals in responding to the extraordinary demands of the claims submitted following the September 11th Attack. The claims adjustment costs incurred by TIG Insurance Company total $755,373.44 to date, and we would not have suffered these losses but for the September 11th Attack.

16. We also suffered losses because of the need to incur legal expenses in the claims adjustment process. These expenses involved the fees charged by counsel retained to advise and assist us in fairly and fully responding to our obligations under the policies of insurance and to resolve questions of policy coverage consistent with the law and our policy obligations. The

legal expenses incurred by TIG Insurance Company total $1,770,010.20 to date, and we would not have suffered these losses but for the September 11th Attack.

17. The loss of money represented by the amounts paid, and costs and expenses incurred, by TIG Insurance Company was a direct result of the September 11th Attack.

18. A schedule identifying each insured and policy holder who submitted a covered claim which was adjusted as of the date of this Affidavit and for which payment in the total aggregate amount of $76,084,229.30 was made by TIG Insurance Company is attached hereto as Exhibit "A", Columns A through D. Also, a schedule identifying the category and the total of claims adjustment costs incurred by TIG Insurance Company is attached hereto as Exhibit "A", Column E. Finally, a schedule identifying the total of legal expenses incurred by TIG Insurance Company is attached hereto as Exhibit "A", Column F.

Further affiant says naught.

*(signature)*
Robert Knowles
Vice President
TIG Insurance Company



*(signature)* Tracy Powhatan 1-11-07

Pursuant To This Court's Order Dated May 9, 2005, The Schedule Attached As Exhibit A Has Been Filed Under Seal In Order To Protect The Identity Of The Insureds From Public Disclosure.