UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*     *Federal Insurance Co. v. al Qaida*
                                03 CV 06978 (RCC)

# REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ASSESSMENT OF DAMAGES AGAINST THE DEFAULTED DEFENDANTS

COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
(215) 665-2000

I.   **INTRODUCTION**

On February 13, 2007, several of the plaintiffs in *Federal Insurance Co., et al. v. al Qaida, et al.* 03 CV 6978 (RCC) (Plaintiffs) filed a Motion for Assessment of Damages Against the Defaulted Defendants[1] Under the Anti-Terrorism Act (Motion for Assessment). The Motion for Assessment requests that the Court assess damages against the defaulted defendants for Plaintiffs' property and business damage claims under the Anti-Terrorism Act, based on the detailed affidavit testimony of Plaintiffs' designated representatives and officers. Consistent with well-established authority, the Motion for Assessment advocates that the measure of damages applicable to Plaintiffs' business and property damage claims under the ATA is simply the aggregate of Plaintiffs' September 11th payments and expenses, trebled.

On March 2, 2007, the Defendants' Executive Committee submitted a letter to the Honorable Judge Richard Conway Casey, which was not filed of record through the ECF system or otherwise docketed in the case, in which the Defendants' Executive Committee requests that the Court deny Plaintiffs' Motion for Assessment. In that letter, the Defendants' Executive Committee does not dispute the propriety of the measure of damages advanced by plaintiffs in the Motion for Assessment, or that the affidavit testimony of Plaintiffs' designated representatives and officers provides a competent evidentiary basis for this Court to assess damages against the defaulted defendants. Instead, the Defendants' Executive Committee contends that this Court should hold the assessment of damages against the defaulted defendants in abeyance until the completion of pre-trial proceedings against all of the non-defaulted

---

[1]   The Court entered default judgments as to liability against approximately 300 defendants on April 7, 2006, and held that Plaintiffs were entitled to have the value of damages recoverable from those defendants set at a hearing. Thus, the Court most certainly did not find that Plaintiffs were not entitled to an assessment of damages against the defaulted defendants "at this time," as the Defendants' Executive Committee suggests in its letter. Given the straightforward measure of damages applicable to Plaintiffs' business and property claims under the ATA, the Motion for Assessment submits that the value of those claims can be assessed based on affidavit testimony, in lieu of a formal evidentiary hearing.

defendants, and leave the valuation of Plaintiffs' business and property injuries to the jury at the time of trial. Thus, the Defendants' Executive Committee essentially advocates that Plaintiffs' claims against the defaulted defendants should be suspended, likely for a period of several years. In addition, although the members of the Defendants' Executive Committee have never publicly indicated that they represent any of the defaulted defendants against whom Plaintiffs seek an assessment of damages, the Defendants' Executive Committee nonetheless expresses in its letter a concern that the valuation of Plaintiffs' business and property damage claims against the defaulted defendants (a group which includes Osama bin Laden, al Qaida and more than two hundred other designated sponsors of terrorism and terrorist organizations) could lead to execution proceedings against "innocent" parties.

For the reasons set forth below, Plaintiffs respectfully submit that the Defendants' Executive Committee fundamentally lacks the authority or standing to oppose Plaintiffs' Motion for Assessment, and that its letter submission directly to the Court is a substantive and procedural nullity. Furthermore, Plaintiffs are entitled to an assessment of damages by this Court for their business and property damage claims at this time, and the failure to promptly set a value of those claims would in fact severely prejudice Plaintiffs.

## II.    ARGUMENT

### A.    The Defendants' Executive Committee Has No Authority to Oppose Plaintiffs' Motion for Assessment

During a hearing on September 27, 2005, this Court directed the defendants to form an Executive Committee to facilitate progress in the consolidated proceedings, a measure the defendants had long resisted. In response to that directive, counsel for the defendants expressed concerns regarding the proper scope of authority that Executive Committee should be granted, given the potentially divergent interests of the defendants. In view of those concerns, counsel for

2

the defendants requested that the defendants be afforded the opportunity to draft the Order governing the structure and scope of authority of the Defendants' Executive Committee.

That Order, which was endorsed by the Court in the form submitted by the defendants, provides as follows:

> 1. The defendants shall designate a single Executive Committee which will have **the following authority, *and no other authority***:
>
>     a. To confer and agree with Plaintiffs' Executive Committee on scheduling matters relating to court hearings, depositions, and deadlines affecting defendants generally, and on proposed agenda items for Court hearings.
>
>     b. To coordinate communications with counsel for any plaintiff seeking the consent of defendants generally to a non-dispositive motion.
>
>     c. To coordinate the examination of witnesses by defense counsel at a deposition or hearing.
>
>     d. To coordinate communications with Plaintiffs' Executive Committee and with the Court concerning any requested changes in this case management and pre-trial scheduling order.

Case Management Order No. 5 (emphasis supplied).

As the plain language of Case Management Order No. 5 makes clear, the Defendants' Executive Committee fundamentally lacks the authority to file any opposition to Plaintiffs' Motion for Assessment. Because the defendant themselves chose the relevant limitations on the authority of their Executive Committee, those limitations should be strictly enforced. Accordingly, this Court should strike the Defendants' Executive Committee's March 2, 2007 letter, and disregard the arguments advanced therein entirely.

### B. The Defendants' Executive Committee's Letter to the Court Is Procedurally Improper

This Court also should strike the Defendants' Executive Committee's March 2, 2007 letter on the grounds that it was not properly filed of record, as required by the rules and

3

governing case management orders. Pursuant to the governing case management orders and practices of the Southern District of New York, the parties in this case generally are required to make written submissions through the ECF system. Although the Court has permitted letter briefing in certain settings, the use of that practice has generally been restricted to procedural and discovery issues, or disputes relative to which the parties consent to letter briefing. In the limited circumstances where letter briefing is permitted, this Court's June 17, 2004 Order requires that the parties refrain from submitting letter briefs to the Court until the completion of all such briefing, and then submit the positions of all parties in a single package.

By virtue of their participation in these proceedings over the last four years, the members of the Defendants' Executive Committee are intimately familiar with these procedures, and unquestionably aware that letter oppositions are not permitted in relation to motions filed through the ECF system, such as Plaintiffs' Motion for Assessment. Indeed, in the nearly four year history of this case, Plaintiffs are unaware of a single instance in which a defendant has submitted a letter in opposition or reply to a brief filed through the ECF system. Nonetheless, in this isolated instance, the Defendants' Executive Committee chose to deliberately ignore the governing briefing procedures, and submit a letter opposition directly to the Court, prior to the completion briefing.

Presumably, the Defendants' Executive Committee chose to ignore the governing procedures in an effort to influence the Court without having to submit a formal filing in the name of a particular defendant or defendants, or to gain some other perceived strategic advantage. Regardless of its motive, this Court should not countenance such a deliberate attempt to manipulate the judicial process in contravention of the governing rules.[2]

---

[2] The requirement that the parties file briefs of record, in their own names, serves to protect the integrity of the judicial system in several significant ways, which would be undermined by the acceptance of the letter oppositions submitted directly to chambers by the Defendants' Executive Committee. As an example, proper identification of the party filing the brief is necessary to evaluate the standing of that

4

### C.     Joint and Several Liability Principles Do Not Warrant Deferral of an Assessment of Damages Against the Defaulted Defendants

In addition to the standing and procedural deficiencies identified above, the Defendants' Executive Committee's letter fails to present a valid substantive argument in opposition to the Motion for Assessment. In support of its request that the Court deny the Motion for Assessment, the Defendants' Executive Committee summarily argues that Plaintiffs' claims in this action rest on conspiracy and aiding and abetting theories, which implicate principles of joint and several liability. Given these joint and several theories of recovery, the Defendants' Executive Committee raises concerns regarding the potential for "inconsistent judgments," as to both liability and damages issues. These arguments misapprehend plaintiffs' theories of liability under the ATA, and are directly inconsistent with relevant authority.

#### 1.     Plaintiffs' ATA Claims Against the Defaulted Defendants Do Not Rest Solely on Conspiracy and Aiding and Abetting Theories

Contrary to the unsupported assertion in the Defendants' Executive Committee's letter, Plaintiffs ATA theories are not predicated solely on concerted action theories of liability. As the 7th Circuit observed in Boim v. Quranic Literacy Inst., 291 F.3d 1000, 1015 (7th Cir. 2002), plaintiff asserting claims under the ATA may establish liability in either of two ways: (1) based on common-law theories of conspiracy and aiding and abetting liability; or (2) by demonstrating that the defendant violated the ATA's criminal provisions, and that those violations were a substantial factor in bringing about plaintiff's injuries. In the present case, plaintiffs have advanced ATA claims against the defaulted defendants under all theories of liability available under that statute, including claims based on the defaulted defendants' violations of the ATA's criminal provisions.

---

party in relation to the issues in dispute, as well as potential conflicts with positions previously asserted in the litigation. In addition, formal submissions of briefs and pleadings of record is necessary to ensure that the parties comply with the obligations of Rule 11.

5

In view of the foregoing, the default judgments previously entered against the defaulted defendants as to liability under the ATA do not rest solely on conspiracy and aiding and abetting theories. Accordingly, the Defendants' Executive Committees' arguments – all of which rest on the flawed assumption that common law conspiracy and aiding and abetting theories represent the sole basis of liability advanced against the defaulted defendants under the ATA - necessarily fail.

> 2. **The Entry of Default Judgments and Assessment of Damages Do Not Present any Potential for Inconsistent Judgments as to Liability Issues**

Moreover, even if Plaintiffs' ATA claims were predicated solely upon concerted action theories of liability, the entry of default judgments and assessment of damages against the defaulted defendants would not present any risk of inconsistent liability judgments, as the Defendants' Executive Committee implies in its letter. In cases involving theories of joint and several liability, differing results as to liability issues are not logically inconsistent or contradictory. In re: Uranium Antitrust Litig., 617 F.2d 1248, 1257 (7th Cir. 1980). As a result, every court in this Circuit to have considered the issue has held that the entry of default judgments against fewer than all defendants as to liability does not present any potential for inconsistent judgments in cases involving joint and several theories, and is in fact entirely appropriate.[3] See International Gemmological Institute, Inc. v. Rafaeil., 2005 U.S. Dist. LEXIS

---

[3] Although the Defendants' Executive Committee does not cite a single case in support of its misplaced arguments regarding the alleged potential for inconsistent liability judgments, Plaintiffs assume those arguments are loosely based on the Supreme Court's decision in Frow v. De la Vega, 82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872). In Frow, the plaintiff filed an action against multiple defendants, alleging theories of *joint* liability. The trial court entered a default judgment against one of the defendants, but subsequently dismissed the plaintiff's complaint on the merits as against the other defendants. The Supreme Court later reversed the default judgment, reasoning that the trial court in a case involving theories of *joint* liability should not enter default judgment against the defendant until and unless the Court finds for plaintiff as against the appearing defendants. Id. at 554. Although Frow remains good law, it has been narrowly construed by every court in this Circuit to apply only to cases involving "true joint" liability, and to have absolutely no application to cases involving theories of joint and several liability. International Gemmological Institute, 2005 U.S. Dist. LEXIS 19288 at *6. Consistent with this reasoning, the Frow doctrine applies only (1) where the theory of recovery is one of true joint liability, such that, as a matter of law, ***no one defendant may be liable unless all defendants are liable*** or (2)

19288 *6 (S.D. N.Y. 2005). Accordingly, the arguments the Defendants' Executive Committee raises regarding potential inconsistent judgments on liability questions should be rejected out of hand.[4]

More fundamentally, neither the Defendants' Executive Committee nor the individual non-defaulting defendants possess standing to challenge the default judgments on liability grounds. In presenting its regarding the alleged potential for inconsistent judgments as to liability issues, the Defendants' Executive Committee conveniently ignores the fact that this Court already has entered default judgments as to liability against the defaulted defendants, notably without opposition from any of the non-defaulting defendants. Those default judgments are subject to challenge only by the defaulted defendants themselves, under Fed. R.Civ. P. 60.[5] Neither the Defendants' Executive Committee nor the individual non-defaulting defendants have standing to challenge those default judgments as to liability. Schmid, Inc. v. Zucker's Gifts, Inc., 766 F. Supp. 118, 123 (S.D. N.Y. 1991). Indeed, this Court previously rejected an attempt by the non-defaulting defendants to challenge the liability default judgments entered in the World Trade Center Properties and EuroBrokers cases, and held that any challenge to those default judgments must be presented by the defendant against whom that judgment was entered. See May 22, 2006 Orders, Docket Nos. 1812, 1814

---

where the nature of the relief demanded is such that, in order to be effective, it must be granted against each and every defendant. In re: Uranium Antitrust Litig., 617 F.2d at 1256-58. Obviously, neither of those situations applies here.

[4]  The arguments the Defendants' Executive Committee raises on this point also are without practical merit. For example, the Defendants' Executive Committee raises as a potential point of inconsistency the possibility that the Court could later find that no conspiracy existed. However, the fact that the September 11, 2001 tragedy was the result of a successful conspiracy to attack the United States through terrorist means is most certainly beyond any rational dispute.

[5]  Although irrelevant given its lack of standing, it is worth noting that the Defendants' Executive Committee makes no effort to address or satisfy the standards for vacating default judgments under Rule 60, a fact which further requires that its arguments be rejected.

7

### 3. Delaying the Assessment of Damages Against the Defaulted Defendants Would Severely Prejudice Plaintiffs and Undermine the Objectives of the ATA

Furthermore, where proceedings against the non-defaulting defendants could potentially extend for a significant period of time, the mild administrative inconvenience which could potentially result from inconsistent damage valuations is greatly outweighed by the severe prejudice the plaintiff would suffer from delaying the assessment of damages against defaulting parties, and it is therefore necessary and appropriate to proceed with that assessment. In this regard, the decision of the Court in International Gemmological Institute is particularly instructive.

In International Gemmological Institute, a gem appraisal corporation sued numerous defendants, including one of its former employees and a number of jewelry companies, alleging theories of joint and several recovery. International Gemmological Institute, 2005 U.S. Dist. LEXIS 19288 at *2. After a number of defendants failed to appear in a timely manner, the Court entered default judgments against those defendants, and referred the matter to a magistrate judge for an inquest on damages. Id. One of the non-defaulting defendants objected to the proposed assessment of damages against the defaulted defendants, arguing that the inquest was premature and should be delayed until the liability of all defendants had been determined. Id. at *4.

The Court rejected the defendant's arguments, reasoning that plaintiff's assertion of theories of joint and several liability did not preclude the Court from assessing damages and entering default judgments against defendants who failed to appear, and that the failure to promptly assess damages against the defaulting defendants would severely prejudice the plaintiff. Id. at *7-9. In reaching its decision, the Court acknowledged that other courts had on occasion declined to assess damages against defaulted defendants in joint and several liability cases prior to the conclusion of all pre-trial proceedings. However, the Court correctly noted that those decisions were predicated solely on principles of judicial economy, which must yield to

8

more important considerations in complex cases, especially where proceedings against the non-defaulting defendants are unlikely to conclude in a short time. Id. at *6-7. In this respect, the Court held as follows:

> Many courts, however, have refused to assess damages against defaulting defendants in these cases since doing so presents the possibility of judgments inconsistent with jury awards against the non-defaulting parties. …The main justification for requiring such a delay has been judicial economy. Here, however, the strain on judicial resources is so slight that this consideration must give way to the interests of the parties in proceeding with the inquest.
>
> It is undisputed that the amount of damages that a plaintiff may recover from defaulting and non-defaulting defendants in a case based on joint and several liability should not differ. However, it is unclear why the mere possibility that such a circumstance may come to pass should prevent this Court from assessing damages. If a jury returns a verdict for a different amount than is assessed during this inquest, my ruling will be set aside, and the jury's finding will prevail. This mild administrative inconvenience is clearly outweighed by the interests of the parties in proceeding with the damage assessment at this time.

Id. at *7-8.

The International Gemological Institute Court further recognized that the failure to promptly assess damages against the defaulting defendants could substantially prejudice the plaintiff, *as well as the non-defaulting defendants*. Id. at *7-8. In this regard, the Court noted that postponing the inquest could potentially jeopardize plaintiff's ability to recover for its injuries, as potentially protracted litigation against the non-defaulting defendants would provide the defaulting defendants with "ample opportunity to spend, secrete, or otherwise protect" their assets.[6] Id. at *7. Finding that the proposed inquest on damages could give rise to substantial

---

[6] For this same reason, the Court recognized that delaying the inquest would likely cause harm to the non-defaulting defendants as well, by requiring them to pay damages that would otherwise have been satisfied from the assets of the defaulted defendants. This potential prejudice to the non-defaulting defendants is all the more reason to strictly enforce the limitations on the Defendants' Executive Committee's authority in the present context, and strike its letter submission to the Court.

9

prejudice to plaintiff's interests, and presented absolutely no potential prejudice to the non-defaulting defendants, the Court held that a prompt inquest in the damages was necessary and appropriate. Id. at *9.

The International Gemological Institute decision offers compelling reasoning in favor of granting Plaintiffs' Motion for Assessment. As was the case in International Gemological Institute, the proceedings against the non-defaulting defendants in these consolidated cases are likely to be protracted. In fact, given the number of parties involved, the complexity of the issues presented, and almost certain appeals by both plaintiffs and defendants, final resolution of all claims against all of the non-defaulting defendants will almost certainly take several years. Delaying the assessment of damages until completion of those proceedings would allow the defaulted defendants to hide and transfer their assets, thereby depriving plaintiffs of any potential for recovery from those defendants. This risk is especially acute in the present case, given that more than 200 of the defaulted defendants are designated terrorist organizations and sponsors, located in foreign countries and dedicated to covertly funding terrorist attacks against the United States.[7] Plaintiffs respectfully submit that mild administrative inconveniences should not serve to effectively immunize such parties from any financial liability to the victims of the September 11th Attack. Indeed, delaying the assessment of damages against those defendants and thereby affording them an opportunity to shield their assets would run afoul of the ATA's stated objective – to imperil the flow of terrorism's lifeblood, money. Boim, 291 F.3d at 1021.

---

[7] Given the predominance of designated terrorist organizations and sponsors in the defaulted defendant class, Plaintiffs submit that the concerns the Defendants' Executive Committee raises regarding potential harm to "innocent" parties is deeply misplaced. The far more likely scenario is that delaying the assessment of damages will benefit reprehensible parties like Osama bin Laden, Ayman al Zawahiri, Khalid Sheikh Mohamed and al Qaida itself. Regardless, unless the members of the Defendants' Executive Committee represent those defendants, they have no standing to present arguments on their behalves.

### III. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court strike the Defendants' Executive Committee's March 2, 2007 letter submission, and grant Plaintiffs' Motion for Assessment in its entirety.

> Respectfully submitted,
>
> COZEN O'CONNOR
>
> BY: _____
> ELLIOTT R. FELDMAN, ESQUIRE
> SEAN P. CARTER, ESQUIRE
> ADAM C. BONIN, ESQUIRE
> 1900 Market Street
> Philadelphia, PA 19103
>
> (215) 665-2000