

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

*In re* TERRORIST ATTACKS ON SEPTEMBER 11, 2001 (*Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-6978).

**OPINION**

03-MDL-1570 (GBD)

---

GEORGE B. DANIELS, United States District Judge:

In this vast multi-district litigation, Plaintiffs allege that hundreds of defendants sponsored and aided the terrorist attacks on September 11, 2001 by knowingly and intentionally providing financial and other material support to Osama bin Laden, al Qaeda, and its affiliated terrorist organizations. One of the defendants, Dr. Abdul Rahman Al-Swailem ("Al-Swailem"), is the former President of both the Saudi Joint Relief Committee ("SJRC") and the Saudi Red Crescent Society ("SRC"), two instrumentalities of the Saudi government that are immune from suit under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 *et seq.* Plaintiffs allege that Al-Swailem used his authority over the SJRC and the SRC to deliver material support and resources to al Qaeda. Al-Swailem moved to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3), on the grounds that he is entitled to common law sovereign immunity. (Motion to Dismiss, (ECF No. 2773).) For the reasons set forth below, Al-Swailem's motion to dismiss is GRANTED.

## BACKGROUND

Al-Swailem is one of nine[1] "Charity Official defendants" who "allegedly controlled and managed purported charitable organizations that provided support and funding to al Qaeda" in the years prior to the September 11, 2001 terrorist attacks. *In re Terrorist Attacks on Sept. 11,*

---

[1] The other eight Charity Official defendants did not join this motion to dismiss on common law sovereign immunity grounds.

1

*2001 (Asat Trust Reg., et al.)*, 714 F.3d 659, 666 (2d Cir. 2013) ("*Terrorist Attacks (Asat Trust Reg., et al.)*"). In 1998 and 1999, respectively, Al-Swailem was appointed by the King of Saudi Arabia, Fahd bin Abdulaziz, to serve as President of the SRC and the SJRC. Al-Swailem led both organizations until 2005.[2] Al-Swailem is among the Charity Official defendants who allegedly:

> (1) served as senior officials of one or more of al-Qaeda's front charities, (2) used their authority over those organizations to orchestrate their material support and sponsorship of al-Qaeda, and (3) acted with knowledge that the organizations under their control were channeling material support and resources to al-Qaeda, and that such support would be used to support al-Qaeda's jihad against the United States.

*Id.* at 667 (citations and internal quotation marks omitted). Al-Swailem argues that Plaintiffs only allege one act that could be construed as providing material support to al Qaeda: "[A]s head of the SRC, al Swailem was responsible for the decision to appoint [Wa'el] Julaidan as a Director of the SJRC, thus placing a prominent and known al Qaida figure in a position of authority within his charity." (Am. RICO Statement, (ECF No. 2784-1), Ex. 1 at 11.) "[A]ccepting all material facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff[s'] favor," *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012), this Court relies on the allegations against Al-Swailem in the Complaint and as characterized by the Second Circuit in *Terrorist Attacks (Asat Trust Reg., et al.)*. (*See* Oral Arg. Tr. 56:19-20 (Apr. 24, 2014) (Plaintiffs' counsel stated that "the way that the Second Circuit characterized [the allegations] is, in fact, the law of the case").)

On June 17, 2010, this Court dismissed Al-Swailem, the SJRC, and the SRC from this case—Al-Swailem on personal jurisdiction grounds, and the SJRC and the SRC on sovereign immunity grounds. *See In re Terrorist Attacks on September 11, 2001*, 718 F. Supp. 2d 456, 467

---

[2] Declaration of Abdul Rahman Al-Swailem, (ECF No. 2775, Exhibit 1), ¶ 8; Declaration of Dr. Adbulrahman A. Al-Suwailem, (ECF No. 2775, Exhibit 3), ¶ 1.

2

n.4, 476 (S.D.N.Y. 2010) ("*In re Terrorist Attacks IV*"). The decision dismissing Al-Swailem did not address the merits of Al-Swailem's common law sovereign immunity defense due to his dismissal on personal jurisdiction grounds. *See id.* at 467.

On April 16, 2013, the Second Circuit vacated this Court's judgment insofar as it dismissed Plaintiffs' claims against the Charity Official defendants, including Al-Swailem, and other defendants, and remanded the case as to those claims only for "prompt commencement of a course of judicially-supervised jurisdictional discovery." *Terrorist Attacks (Asat Trust Reg., et al.)*, 714 F.3d at 666, 682. Personal jurisdiction discovery has since been ongoing under the guidance of Magistrate Judge Frank Maas.

In a separate opinion, also issued April 16, 2013, the Second Circuit upheld the dismissal of the SJRC and the SRC because the defendants qualify as instrumentalities of a foreign sovereign, and Plaintiffs did not meet their burden of showing that an exception to the FSIA applies. *In re Terrorist Attacks on September 11, 2001 (Saudi Joint Relief Committee, et al.)*, 714 F.3d 109, 114, 118 (2d Cir. 2013) ("*Terrorist Attacks (SJRC)*") ("[T]he noncommercial tort exception to the immunity from suit conferred by the Foreign Sovereign Immunities Act does not apply in these circumstances pursuant to the so-called 'entire tort' rule, and thus, we lack jurisdiction to consider plaintiffs' claims against the SJRC and the SRC.").

On August 29, 2013, Al-Swailem again moved this Court for dismissal on the grounds that he is entitled to common law sovereign immunity. He argues that he is immune from suit because the Saudi government has asserted immunity on his behalf,[3] and Plaintiffs' allegations

---

[3] *See* Declaration of H.E. Adel A. Al-Jubeir, (ECF No. 2773, Exhibit 4), ¶ 2 (requesting immunity from this Court for Al-Swailem).

3

are based entirely on official acts that he took in his official capacity as head of the SJRC and the SRC—two instrumentalities of Saudi Arabia that are themselves immune from suit.[4]

Plaintiffs argue that (1) the motion is not properly before this Court because Saudi Arabia has not requested a suggestion of immunity from the State Department; (2) sovereign immunity is not available to the former head of charitable organizations that engage in activities commonly performed by private entities; and (3) the allegations against Al-Swailem relate to illegal conduct that is not protected by the immunity doctrine.[5]

## MOTION TO DISMISS

### I. LEGAL STANDARD

Foreign sovereign immunity is a question of subject matter jurisdiction. *See, e.g.*, *Rosenberg v. Pasha*, 577 F. App'x 22, 23 (2d Cir. 2014). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.

---

[4] Al-Swailem also moves to dismiss pursuant to Rules 12(b)(7) and 19(a)(1)(B) for failure to join a party, arguing that the SJRC and the SRC are required parties or real parties in interest and cannot be joined because both instrumentalities are immune under the FSIA. *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 867 (2008) ("A case may not proceed when a required-entity sovereign is not amenable to suit."); *see also Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 72 (D.D.C. 2013) (granting immunity to former Iranian officials because "the nature of the allegations in this case . . . are essentially . . . state actions performed at the direction of [the former officials]"), *aff'd*, 782 F.3d 9 (D.C. Cir. 2015). Because Al-Swailem is entitled to common law sovereign immunity, this Court does not address this alternate ground for dismissal.

[5] Plaintiffs also argue that consideration of Al-Swailem's sovereign immunity claim is inappropriate prior to the completion of personal jurisdiction discovery. However, "[s]overeign immunity is an immunity from trial and the attendant burdens of litigation." *Rein v. Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748, 756 (2d Cir. 1998) (quoting *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990)). "[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)). Therefore, this Court may consider Al-Swailem's motion to dismiss for lack of subject matter jurisdiction even though the Second Circuit remanded this case for personal jurisdiction discovery because "subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000).

4

2000) (citing Fed. R. Civ. P. 12(b)(1)). On a motion to dismiss pursuant to Rule 12(b)(1), "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Rosenberg*, 577 F. App'x at 23 (citing *Makarova*, 201 F.3d at 113).

In *Samantar v. Yousuf*, the Supreme Court held that the FSIA does not apply to individual officials of a foreign state. 560 U.S. 305, 322-24 (2010). However, "[e]ven if a suit is not governed by the Act," as is the case here, "it may still be barred by foreign sovereign immunity under the common law." *Id.* at 324.

Under the common law, a "two-step procedure [is] typically followed when a foreign official assert[s] immunity." *Id.* at 312. First, "the diplomatic representative of the sovereign c[an] request a 'suggestion of immunity' from the State Department." *Id.* at 311 (citation omitted). If the State Department grants the request, "the district court surrender[s] its jurisdiction." *Id.* Second, "'in the absence of recognition of the immunity by the Department of State,' a district court 'ha[s] authority to decide for itself whether all the requisites for such immunity exist[].'" *Id.* (quoting *Ex parte Republic of Peru*, 318 U.S. 578, 587 (1943)). "In making that decision, a district court inquire[s] 'whether the ground of immunity is one which it is the established policy of the [State Department] to recognize.'"[6] *Id.* at 312 (alterations in original) (quoting *Republic of Mexico v. Hoffman*, 324 U.S. 30, 36 (1945)).

The common law distinguishes between two types of immunity: (1) "status-based" immunity that is awarded to sitting heads-of-state and (2) "conduct-based" immunity that is awarded to individuals acting on behalf of a sovereign government. *See Moriah v. Bank of China, Ltd.*, No. 12 Civ. 1594(SAS), 2015 WL 631381, at *3 (S.D.N.Y. Feb. 13, 2015); *see also*

---

[6] *See also Matar v. Dichter*, 563 F.3d 9, 14 (2d Cir. 2009) (quoting *Republic of Mexico v. Hoffman*, 324 U.S. 30, 35 (1945)) ("[W]e must look to common law to determine (a) whether former officials are entitled to immunity under the common-law . . . and (b) if so, whether [the former official] is entitled to immunity 'in conformity to the principles accepted by the department of the government charged with the conduct of our foreign relations.'").

5

*Sikhs for Justice v. Singh*, 64 F. Supp. 3d 190, 193 (D.D.C. 2014) (citations and internal quotation marks omitted) ("Status-based immunities enable certain incumbent foreign officials to perform their duties unencumbered by legal proceedings. Conduct-based immunities shield individuals from legal consequences for acts performed on behalf of the state during their tenure in office."); *Matar v. Dichter*, 563 F.3d 9, 14 (2d Cir. 2009) (quoting *Restatement (Second) of Foreign Relations Law of the United States* § 66(f) (1965)) ("At the time the FSIA was enacted, the common law of foreign sovereign immunity recognized an individual official's entitlement to immunity for 'acts performed in his official capacity.'"). Al-Swailem contends that he is entitled to conduct-based immunity.

## II. EXECUTIVE BRANCH IMMUNITY DETERMINATION

Plaintiffs argue that Al-Swailem's motion to dismiss is not properly before this Court because Saudi Arabia has not requested a suggestion of immunity from the State Department. Plaintiffs rely on a footnote to the Statement of Interest and Suggestion of Immunity that the State Department submitted in *Rosenberg v. Lashkar-e-Taiba*, 980 F. Supp. 2d 336 (E.D.N.Y. 2013), (the "*Rosenberg* Statement") to argue that Saudi Arabia must petition the Executive Branch before seeking immunity for Al-Swailem directly from this Court.

> [B]ecause a foreign state's request for immunity on behalf of an official itself has foreign relations implications, courts should ensure that the Executive Branch has been notified of and had an opportunity to consider such a request before ruling on the immunity issue. Indeed, for that reason, a foreign state's request for an official's immunity should first be presented to the Department of State, not to the court.

*Rosenberg*, No. 10-cv-5381-DLI-CLP, ECF No. 35, at *9-10 n.5 (S.D.N.Y. Dec. 17, 2012).

District courts are empowered to determine common law sovereign immunity without

6

input from the Executive Branch.[7] *See Hoffman*, 324 U.S. at 34-35 ("In the absence of recognition of the claimed immunity by the political branch of the government, the courts may decide for themselves whether all the requisites of immunity exist."); *Heaney v. Gov't of Spain*, 445 F.2d 501, 503 n.2, 506 n.5 (2d Cir. 1971) (deciding the issue of immunity after the court "invited the State Department to submit its views on the questions presented by th[e] case," and "[t]he Department [did] not even acknowledge [the court's] letter"); *Victory Transp. Inc. v. Comisaria Gen. de Abastecimientos y Transportes*, 336 F.2d 354, 358 (2d Cir. 1964) (citation omitted) ("[T]he accredited and recognized representative of the foreign sovereign may present the claim of sovereign immunity directly to the court."); *Moriah*, 2015 WL 631381, at *3 (quoting *Samantar*, 560 U.S. at 312) (explaining that because "[t]here is no indication that [the former official] or the State of Israel requested a Suggestion of Immunity from the State Department," the court "must determine 'whether the ground of immunity is one which it is the established policy of the State Department to recognize'"); *Rishikof v. Mortada*, 70 F. Supp. 3d 8, 12 (D.D.C. 2014) (quoting *Samantar*, 560 U.S. at 311) ("Here, there is no indication that [defendant] or the Swiss Confederation requested a suggestion of immunity from the State Department. Accordingly, this Court must determine whether 'all the requisites for immunity exist.'").

Neither Al-Swailem nor Saudi Arabia has sought a suggestion of immunity from the State Department, and the Executive Branch has not indicated a desire to weigh in.[8] Therefore,

---

[7] In 2011, the then-Legal Advisor to the State Department stated: "[T]he government need not, and should not, speak in every case[;]" therefore, "litigants and courts should be able to use [the State Department's] broader pronouncements to sort out government perspectives and revise their own positions accordingly." Harold Hongju Koh, *Foreign Official Immunity After Samantar: A United States Government Perspective*, 44 Vand. J. Transnat'l L. 1141, 1161 (2011).

[8] The Executive Branch is authorized to submit a statement of interest in state or federal court. *See* 28 U.S.C. § 517 ("The Solicitor General, or any officer of the Department of Justice, may be sent by the

7

this Court "must decide for itself whether it is the established policy of the State Department to recognize claims of immunity of this type." *See Victory Transp. Inc.*, 336 F.2d at 359 (citing *Hoffman*, 324 U.S. at 36).

## III. JUDICIAL BRANCH IMMUNITY DETERMINATION

### A. *Conduct-Based Immunity*

The Second Circuit has determined that the SJRC and the SRC are instrumentalities of Saudi Arabia entitled to immunity under the FSIA. *Terrorist Attacks (SJRC)*, 714 F.3d at 118. Therefore, the immunity enjoyed by the government of Saudi Arabia and its officials extends to the SJRC and the SRC under the FSIA, and to Al-Swailem under the common law for "acts performed in his official capacity." *Matar*, 563 F.3d at 14 (quoting *Restatement (Second) of Foreign Relations Law of the United States* § 66(f) (1965)).

Al-Swailem argues that he is covered by conduct-based immunity because the government of Saudi Arabia has declared that all actions he took as President of the SJRC and the SRC were official, and all of Plaintiffs' allegations relate to acts he took in that official capacity. The Saudi Ambassador to the United States, H.E. Adel A. Al-Jubeir, submitted a declaration to this Court, which states that his "Government respectfully requests this Court grant the motion to dismiss." (*See* Declaration of H.E. Adel A. Al-Jubeir, (ECF No. 2773, Exhibit 4), at ¶ 2.) Al-Jubeir explains the history and purpose of the SJRC and the SRC, (*see id.* ¶¶ 4-6),[9]

---

Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States.").

[9] "The [SRC] and the SJRC are humanitarian relief organizations established and sponsored by the Kingdom of Saudi Arabia." (Declaration of H.E. Adel A. Al-Jubeir ¶ 4.) The SRC "provides emergency medical services and related programs within Saudi Arabia, including a nationwide ambulance network, health clinics, first aid safety, and road accident emergency services, and supports the efforts to ensure the health of over two million pilgrims on the annual Hajj to Makkah. It also supports humanitarian operations in other countries." (*Id.*) "The government continues to fund

8

and declares that "[t]he [SRC] and the SJRC have played and continue to play a crucial role in fulfilling core governmental functions with direct political, social, and foreign-policy implications." (*Id.* ¶ 7.) He concludes by stating: "I have been advised that the claims against Dr. Al-Swailem in this litigation are based on his roles as head of the [SRC] and the SJRC. In those capacities, Dr. Al-Swailem acted at all relevant times as an official of the Saudi government." (*Id.* ¶ 8.)

"[T]o determine the scope of a foreign official's immunity, the relevant inquiry focuses on the official's acts, and not the official's status." *Moriah*, 2015 WL 631381, at *3. Al-Swailem is entitled to immunity because he performed the alleged actions—namely, directing the disbursement of funds and hiring Julaidan—in his official capacity as President of the SRC and the SJRC. Plaintiffs' allegations against Al-Swailem only relate to decisions and actions he took as the director of the two Saudi instrumentalities.[10] Plaintiffs allege that Al-Swailem, *through the SJRC and the SRC*, gave material support to al Qaeda.

Affording Al-Swailem common law sovereign immunity is consistent with State Department policy. The State Department has consistently recommended conduct-based sovereign immunity when (1) the foreign state requests it,[11] and (2) the defendant acted in his

---

and control it." (*Id.*) "The SJRC was established . . . to coordinate Saudi Arabia's humanitarian relief efforts on behalf of displaced Muslim refugees in Kosovo," and its mission was expanded "to include relief work for victims of the ongoing hostilities in Chechnya." (*Id.* ¶ 6.) "[A]t all times [the SJRC's] efforts were limited to charitable and humanitarian efforts." (*Id.*)

[10] *See* Pls. Opp'n, (ECF No. 2784), at 1 ("Al-Swailem used his authority over the Saudi Joint Relief Committee for Kosovo and Chechnya and Saudi Red Crescent Society to deliver material support and resources *directly* to al Qaeda."); Oral Arg. Tr. 36:7-9 (Apr. 24, 2014) (Al-Swailem "used his position to direct resources of the Saudi Joint Relief Committee and Saudi Red Crescent Society directly to Al-Qaeda and . . . he put Al-Qaeda members in positions of authority within the organization . . . .").

[11] *See Rosenberg v. Lashkar-e-Taiba*, No. 10-cv-5381-DLI-CLP, ECF No. 35, at *9 (S.D.N.Y. Dec. 17, 2012) ("In making the official capacity determination, the Department of State considers a foreign government's request (if there is such a request) that the Department of State suggest the former official's immunity.").

official capacity on behalf of a recognized foreign government. *See Doe v. De Leon*, 555 F. App'x 84, 85 (2d Cir. 2014);[12] *Rosenberg*, 980 F. Supp. 2d at 339 (citing *Rosenberg* Statement, at *2-11); *Matar*, 500 F. Supp. 2d 284, 287 (S.D.N.Y. 2007).[13]

In *Rosenberg*, for example, the State Department recommended immunity for two former directors of the Inter-Services Intelligence Directorate of the Islamic Republic of Pakistan ("ISI"), who allegedly "provided critical planning, material support, control and coordination" to the 2008 Mumbai terrorists. *See Rosenberg*, 980 F. Supp. 2d at 339. "Plaintiffs contend[ed] that [the former officials] . . . individually engaged in orchestrating the Mumbai attacks and . . . [were] independently liable for acts of murder, torture and terrorism, classic violations of *jus cogens* norms." *Id.* at 339-40 (internal quotation marks omitted). The State Department recommended immunity because "[t]he complaint contain[ed] largely unspecific and conclusory allegations" and "[o]n their face, acts of defendant foreign officials who are sued for exercising the powers of their office are treated as acts taken in an official capacity, and plaintiffs have provided no reason to question that determination." *Rosenberg* Statement, at *10-11. On appeal, the Second Circuit upheld the dismissal because the State Department's determination was controlling and "[a] claim premised on the violation of *jus cogens* does not withstand foreign

---

[12] In *Doe*, the State Department suggested conduct-based immunity for a former President of Mexico because "[t]he alleged actions as set forth in the Complaint are predicated on [his] actions as President of Mexico, thus involving the exercise of his powers of office" and "those allegations in the Complaint that allege particular conduct . . . do not provide a sufficient reason to question whether that conduct was taken in his official capacity." *Doe v. De Leon*, 11-cv-01433-AWT, ECF No. 38, at *23 (D. Conn. Sept. 7, 2012).

[13] In *Matar*, Plaintiffs alleged that a former Israeli official authorized, planned, and directed the bombing of an apartment building that killed fourteen civilians and wounded 150 others. 500 F. Supp. 2d 284, 287 (S.D.N.Y. 2007). The Israeli ambassador submitted a request for immunity, stating that "anything [the former official] . . . did in connection with the events at issue in the suit[] was in the course of [his] official duties, and in furtherance of official policies of the State of Israel." *Id.* The State Department recommended immunity, stating: "There is no merit in th[e] argument" "that the defendant's acts, as alleged in the complaint, were not 'lawfully within the scope of his authority.'" *Matar v. Dichter*, 05-cv-10270-WHP, ECF No. 36, *23 (S.D.N.Y. Nov. 17, 2006).

sovereign immunity." 577 F. App'x at 23 (alteration in original) (quoting *Matar*, 563 F.3d at 15).

Here, the Saudi government, through its Ambassador, has requested that this Court grant common law sovereign immunity to Al-Swailem, and has declared that all alleged actions were taken by Al-Swailem in his official capacity as head of the SRC and the SJRC. The conclusory allegations in the complaint do not strip Al-Swailem of conduct-based immunity for actions taken in his official capacity. The only non-conclusory allegation, regarding Al-Swailem's hiring decision, is an action taken in his official—not his personal—capacity. Thus, Al-Swailem is entitled to common law, conduct-based sovereign immunity.

### B. *Unlawful Conduct*

Finally, Plaintiffs argue that Al-Swailem's actions as President of the SJRC and the SRC are not subject to immunity because his conduct violated international and U.S. law. Such an assertion is merely an artful way of implicating the *jus cogens* doctrine, which is not recognized by the Second Circuit as an exception to common law sovereign immunity. *See id.* A *jus cogens* argument asserts that a foreign official is not entitled to immunity for acts that violate "'norm[s] accepted and recognized by the international community of states as a whole as a norm from which no derogation is permitted and which can be modified only by a subsequent norm or general international law having the same character.'" *Rosenberg*, 577 F. App'x at 23 (alteration in original) (quoting *Belhas v. Ya'alon*, 515 F.3d 1279, 1286 (D.C. Cir. 2008)). The Second Circuit does not recognize such a limitation to a foreign official's right to immunity from suit in U.S. courts where, as here, that official acted in his official capacity.

11

## CONCLUSION

Dr. Abdul Rahman Al-Swailem is entitled to common law sovereign immunity for his official acts as President of the SJRC and the SRC. Therefore, this Court lacks subject matter jurisdiction over Plaintiffs' claims against him, and Al-Swailem's motion to dismiss is GRANTED pursuant to Federal Rule of Civil Procedure 12(h)(3).

The Clerk of Court is directed to close the motion at ECF No. 2773.

Dated: New York, New York
August 14, 2015

SO ORDERED.

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge